May it please the Court, I'm representing Catherine Cotton, the appellant in this case. She suffers from fibromyalgia, severe hearing loss, pain disorder, personality disorder, and depression. It seems that the heart of the case is the ALJ's conclusion that plaintiff suffers from a histrionic personality disorder. And this came from, there's two places in the record. This was raised at the hearing by the ALJ to the non-examining doctor, Dr. Davis, a psychologist, who testified that plaintiff had a histrionic personality disorder. This was picked out from the diagnosis of Dr. Lechner, the treating psychologist. Dr. Lechner diagnosed plaintiff with many conditions, including pain disorder. Dr. Davis was neither treating nor examining, is that correct? That's right, Your Honor. So he simply reviewed the records. Yes, sir. So he has no way of knowing that she has a histrionic personality disorder except to quote Dr. Lechner's diagnosis. That's correct. What is a histrionic personality disorder? As opposed to being a histrionic personality, I understand that somebody could be a drama queen, but what does it mean to have a histrionic personality disorder? Because as I read the record, it looked to me as though at least a couple of the doctors treated that particular question as itself a medical condition. Well, it clearly is a personality disorder, and it could be grounds for disability on its own if it's disabling. Is it listed in the regulations? Well, the regulations list personality disorders, and that would include histrionic. Do you know of any case in which the Social Security Administration has given benefits on the basis of a histrionic personality disorder? I don't, Your Honor. You don't see it granted on the basis of personality alone that often. Usually if you have a personality disorder, you are likely to have numerous other troublesome conditions. But the only person who diagnosed it in the case is Dr. Lechner, who also diagnosed many other conditions. He was a treating physician, right? He was a treating psychologist, yes. Yeah, so as a treating psychologist, isn't his opinion entitled at least to some deference? It is, Your Honor. So that being so, why isn't the ALJ's picking up on it supported by substantial evidence in the actual medical record? Your Honor, our issue with the ALJ is not that she included it, because certainly Dr. Lechner included it, but the conclusion that she drew from that. And just if you look at Dr. Lechner, how Dr. Lechner dealt with it, he didn't. I thought the term drama queen is what came to mind last night when I was preparing that It's not that she doesn't have these conditions, it's that she may be drawing more attention. That seems to me to be the main thing about the histrionic, attention-seeking. A question framed in slightly different language. If a person had the histrionic personality disorder, is it conceivable that they might exaggerate the duration or intensity of symptoms of an illness such as fibromyalgia or any other? Your Honor, it is conceivable. And I think if we're looking at that, then we have to see what Dr. Davis, who pointed this out, said, which is that the condition itself can be very disabling. So now the court below found that the claimant wasn't malingering, and no one said that she was, but that any exaggeration is part of her psychological malady. Now, but Dr. Lechner What is it in your view that makes it inappropriate for the ALJ to infer from that that when she says she has a severe hearing loss that requires a dog, for example, that's not an exaggeration because he himself could see, or she herself, I've forgotten which, the ALJ in fact could see that she could hear fine without a dog, but she insisted on having the dog with her. So the bottom line question is how come the ALJ couldn't infer exaggeration with respect to her other conditions? Well, Your Honor, it doesn't mean that she doesn't have the condition, and I understand, but the extent and the duration and the disabling effect of them is subject to exaggeration, I assume. Well, Your Honor, if she's exaggerating, and numerous doctors and providers have discussed the hearing loss, and I feel that they are, they should be considered more than the ALJ's observation in a very small hearing room where she could clearly read the lips versus other situations where the doctors were working with her, being behind her and so forth. But if she is exaggerating, it's part of her mental illness that she is. Counsel, let me frame the question slightly differently, and I'm willing to assume for sake of argument that the ALJ didn't have a proper basis to say she doesn't have fibromyalgia. Let's assume she has that disorder. But let's say she wrote a memo to a friend or had a conversation with a friend, and she said, well, this fibromyalgia that I have isn't such a big problem. I can live with it, but I don't want to work, so I'm going to exaggerate my symptoms to try to get Social Security. Wouldn't an ALJ, if he or she had that evidence, be allowed to say this person isn't entitled to a disability determination because they're exaggerating their symptoms? Your Honor, I... In fact, they can work, which is the substance of the Social Security law, is posing that question, can the person work? I think if that were the case, it's going beyond outside of this record and is not histrionic. I'm just giving you a hypothetical, but if that were the case, you'd agree that the ALJ might be able to say, well, I'm not going to find the person disabled. He might, based on... Let's say that's not the case. Okay. But the ALJ has evidence that a person has a histrionic personality disorder, and that plus other indications lead the ALJ to think the person's exaggerating, then is that impermissible for the ALJ to rely on that? Your Honor, it seems to me that if it's a histrionic personality disorder, then it's an illness. And if she... based on histrionic personality as the basis for disability? I don't believe so, Your Honor. The problem is that it was diagnosed as a disorder, but the ALJ took it as evidence of exaggeration. So he uses the personality disorder against her to say that she's not credible. And I'm arguing that if we're considering it at all, it should be used to find it as a contributing factor in her disability. But what really becomes an issue is in the whole fibromyalgia diagnosis, where the ALJ seems to be suggesting that the claimant researched fibromyalgia, figured it out, and then pretended to fake the tender points, is what she seems to be saying. And there's no basis for this whatsoever. I'd like to point out that Dr. Morris, who's the pain specialist and describes fibromyalgia as a sensory nervous system issue, repeatedly noted that control points were negative. And it seems to me, as she's a drama queen, that she'd be expressing pain in all the tender points. Do you want to save a little time for rebuttal? I will. I'll give you an extra minute. Okay. All right. Thank you. May it please the Court. I'm Terry Shea, appearing for the Commissioner of Social Security. This case is really a substantial evidence case as to what is sufficient evidence for the ALJ to draw her or his conclusions from. The Social Security Administration advises their adjudicators to not make decisions about psychological impairments or physical impairments without getting advice of experts. Dr. Davis was called for that reason. The ALJ should be able to depend on Dr. Davis and on the DDS experts who looked at the same evidence and drew different conclusions. But it's quite interesting that Dr. Davis notes the histrionic personality disorder, the drama queen syndrome, and then the ALJ picks up on that and uses it against her for credibility. So the psychologist says, gee, she's got this condition, and the ALJ concludes from the fact that a psychologist says she has a psychological condition that she is therefore lying or at least exaggerating all of her complaints about fibromyalgia. And that looks like kind of a long bridge to gap there. Well, I did, in researching for this oral argument, I tried to find cases that talked about histrionic personality disorder and how the courts have looked at them. And I really was not able to find anything in the social security genre. There was more in other situations where someone was suing an employer based on things that happened at work and had a histrionic personality disorder. And the way it was described in those cases, as well as in this case, is the person is inherently unreliable because of this tendency to exaggerate and overemphasize. So basically you have the choice of, okay, are we going to consider that in and of itself disabling because it will put off employers, put off the public? Or do you have to look beneath it and say, okay, we know she's unreliable. Let's look at the evidence of her illness or non-illness. I'm sorry, go ahead. What I was going to say was this. And I'm definitely not a medical expert, but I'm trying to understand this. I'm assuming that a person could have a histrionic personality disorder and at the same time have a disabling illness, whether it was a back problem or fibromyalgia or anything else that made it so that they really couldn't work. That's possible. Of course. So the fact they have a histrionic personality disorder shouldn't necessarily preclude them from proving that they can't work. On the other hand, with fibromyalgia, it's an odd disease because I think it can have minor impact or major impact. And the way they tell the difference is pretty much from what the patient's symptoms are. It's like a clinical diagnosis of severity. Based on subjective reporting, yes. So here we have a problem that the severity of her fibromyalgia depends on, is measured by what she says, but what she says is somewhat unreliable based on this disorder. So how do you sort that out and what should an ALJ be looking at to make a determination? Well, the agency would prefer that she or he call on a medical expert for advice about this and that she and the medical expert will look at the record as a whole to try to sort that out. And basically in this case, that's what the ALJ did. There was not only Dr. David saying she's inherently unreliable because of her histrionic personality disorder. There was another doctor who basically said, well, she's coming in with a cane, but she clearly doesn't need it. Things like that. Dr. Davis was a psychologist. Is that right? Yes. Then how is he qualified to examine, for example, Dr. Morris, who's the pain specialist, the MD? You know, it's kind of those interchangeable things where medical doctors often deal with psychiatric illness. Psychiatric doctors are not precluded from looking at the physical record as well. Dr. Davis was not an MD. No, he's a PhD. That would seem to give him to – does the administration allow a psychologist to review an MD and disagree with an MD? It's generally not what the agency asks the psychologist to do. They will ask them generally to look at the mental impairments. So, I mean, even if you feel that it was impermissible for him to look at fibromyalgia, he basically is just saying she's inherently unreliable. And to the extent that the ALJ saw the unreliability as impairing the judgment of the physical doctors, that doesn't seem an unreasonable leap to take. You know, especially since fibromyalgia is dependent so completely on the subjective reporting of the patient. There are other, you know, features about the lady that seem very exaggerated. At one point she was saying she spent, you know, 26 out of 27 days a month she couldn't work, or the idea that she needed not one service dog but two. Even people who are profoundly deaf, I think the court can take judicial notice of the fact that very few hearing impaired people actually ask for a service dog as opposed to getting one or two. May I ask you another question for clarification? Sure. Somehow I could be mistaken on this, but I had the impression that the ALJ did not say she's got fibromyalgia but she's exaggerating her symptoms. It didn't say merely that. I thought the ALJ also said, based on what David said, I don't think she's got fibromyalgia. If she did say that, I miss that entirely, Your Honor. But basically I thought she said that fibromyalgia was simply a non-severe impairment. It's not the same as saying it's not an impairment. It didn't say that she didn't have it. She just said she felt it was non-severe. Well, that's a different issue. You know, basically a diagnosis by itself does not equal a severe impairment, although many times it's looked at that way to get past the very minimal hurdle at step two. But it's another case law. In Lewis, for example, the court has found that as long as you whether that severity or non-severity judgment at step two is incorrect, if you reasonably include limitations from that non-severe impairment in the residual functional capacity, you overcome that error or it's a harmless error. And our position with that, the agency's position with that, is that because the ALJ included the limitations set by the DDS experts based on a primary diagnosis of fibromyalgia, that that cured any possible error in calling it non-severe. Now, there's a difference, again, between saying it's not a medically determinable impairment for this person and it's a non-severe impairment. Two different calls. If an ALJ says that an impairment like this is not severe, do we have to review that step two decision and say up or down it was right or wrong? Well... Or do we just review the assessment of the RFC at step four? Well, they really... Decide if the real impairments from it were taken into account. Once the claimant gets to pass the step two hurdle on any impairment, the ALJ is required to consider all impairments in combination, even those that are non-severe. So the importance at step two is often harmless, making that determination between severe and non-severe if it is cured later on. It would be, you know, if the inquiry doesn't stop, generally the court doesn't find a step two error because it is possible to resolve it later. Did the court have anything else you'd like me to address? Okay. Judge Reimer, any other questions? Thank you. Okay. Okay, we're going to increase your 35 seconds to a minute 35. On page 38 of the excerpts of record, the ALJ said in the decision, although the possibility of fibromyalgia was raised, particularly by Dr. Morris, the presence of this disorder cannot be sustained in light of the claimant's poor credibility. So she wasn't saying that plaintiff has fibromyalgia, it's simply exaggerated. She's saying she does not have fibromyalgia, contradicting the treating rheumatologist, Dr. Mayer, who diagnosed it quite a ways back, and Dr. Morris, who's diagnosed it several times, continuing to know. May I ask you a record question, please, with respect to Dr. Mayer? If I understand it right, he saw her two times. That's right. And the first time diagnosed her as having fibromyalgia. Was that based on anything other than her self-reporting the first time? Tender points, positive tender points. Does the record show that he conducted that kind of an examination the first time? Yes, Your Honor. He said multiple tender points. Okay. And since I have just a few seconds, I just want to point out that Dr. Davis said that the histrionic disorder was non-volitional. Not just a disability, but non-volitional. And the doctor who said she didn't seem to need the use of the cane also noted that the claimant had sensory loss in a stocking distribution in both of her feet, which would seem to me to indicate that she might need use of a cane, as she says she does. Thank you. Thank you very much. We appreciate the argument on both sides of the case. It's a very interesting case. Okay.
judges: Rymer, Gould, Bybee